1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ABDELFATAH ELLAWENDY,
               Petitioner,
    v.

MONTEREY COUNTY SUPERIOR
COURT,
            Respondent.

Case No.  20-02708 BLF (PR)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS;
DENYING CERTIFICATE OF
APPEALABILITY; DIRECTIONS
TO CLERK**

Petitioner is a state parolee proceeding *pro se* on his original petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the voluntariness of his 2019 plea agreement.  Dkt No. 1.  For the reasons set forth below, the petition will be **DENIED**.

## BACKGROUND

In November 2018, Petitioner was charged via information in Monterey County with stalking, two counts of assault with a deadly weapon, two counts of assault by means likely to produce great bodily injury (enhanced for use of a deadly weapon), and dissuading a witness from testifying.[1]  Dkt No. 12-2 at 21-28; *People v. Ellawendy*, No. 18CR007432; Cal. Penal Code §§ 646.9(a), 245(a)(1), 245(a)(4), 12022(b)(1), 136(a)(1).

In April 2019, Petitioner pled no contest to assault with a deadly weapon.  Dkt No. 12-3 at 30-37.  One month later, he was sentenced to two years in prison.  *Id.*

---

[1] Petitioner also had a second criminal case pending in Monterey County for distributing intimate images in violation of California Penal Code § 647(j)(4)(a).  See Dkt No. 12-3 at 31; *People v. Ellawendy*, No. 18CR006985.  Petitioner pled no contest to the charge and does not challenge the voluntariness of that plea here.

On direct appeal, Petitioner's appellate counsel filed a *Wende*[2] brief, and Petitioner filed a brief on his own raising several issues.  See Dkt No. 12-3 at 71-87, 95.  Like Petitioner's appellate counsel, the California Court of Appeal ("the state appellate court") found no arguable issues and affirmed the judgment.  Dkt No. 12-3 at 90-96.  The California Supreme Court then summarily denied review on March 18, 2020.  Dkt No. 12-3 at 117.

When the last state court to adjudicate a federal constitutional claim on the merits does not provide an explanation for the denial," the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, —— U.S. ——, 138 S. Ct. 1188, 1192 (2018).  "It should then presume that the unexplained decision adopted the same reasoning." *Id.*  Here, the California Supreme Court did not provide an explanation for its denial of the petition for review.  Accordingly, this Court will "look through" the California Supreme Court's decision to the state appellate court's decision. *See Skidmore v. Lizarraga*, No. 14-CV-04222-BLF, 2019 WL 1245150, at *7 (N.D. Cal. Mar. 18, 2019) (applying *Wilson*).

Petitioner filed the instant federal habeas petition on April 20, 2020.  Dkt No. 1.  After an initial review, the Court found that the only cognizable claim in the petition was the claim challenging the voluntary nature of Petitioner's plea and dismissed all other claims.  Dkt No. 6.  On January 27, 2021, Respondent filed an answer on the merits, Dkt No. 12-1, and Petitioner filed a traverse, Dkt No. 30.

## STATEMENT OF FACTS

The following background facts are taken from the probation officer's report that was submitted in connection with Petitioner's sentencing hearing.  The state appellate court also relied on these facts in its unpublished opinion on direct appeal:

---

[2] In *People v. Wende*, 25 Cal. 3d 436 (1979), the California Supreme Court held that when appointed counsel files an opening brief for an indigent defendant that raises no arguable issues, an appellate court is required to conduct an independent review of the record.

Case No. 20-02708 BLF (PR)
ORDER DEN. PET. FOR WRIT OF HABEAS CORPUS; DEN. CERTIFICATE OF APPEALABILITY

On July 22, 2018, Pacific Grove police officers responded to a call concerning an assault by a suspect with a vehicle. The alleged victim of the assault, Jane Doe, reported to the officers that her ex-boyfriend, defendant, had been stalking her for some time. Doe stated that she had been staying in Carmel Valley with her fiancé because she was concerned about her safety, and she had gone to Pacific Grove to her home to pack for a trip.

Doe told the officers that she had observed defendant driving in the area where she lived; when he saw her, he made a U-turn and followed her. Doe stated that she passed by her home and proceeded toward the police department. Defendant followed her so closely in his car that he nearly collided with her. Doe told the officers that defendant passed her and then slammed on the brakes, attempting to force her to stop. Doe swerved into the opposite lane to avoid colliding with him. She said defendant repeated this maneuver (i.e., passing her and then slamming on his brakes) several times, before eventually giving her the middle finger and driving off. Doe told the officers that defendant had driven by her home before he had left the area.

Officers conducted a check of the area, located defendant, and conducted a traffic stop. After officers explained why they were stopping him, defendant stated that he worked as an Uber driver, had picked up a passenger nearby, and had then seen Doe's vehicle, "but, 'didn't think much of it.' " He denied having made contact with Doe other than seeing her at an intersection. Defendant initially told officers he did not know where Doe lived, but later admitted he did. He told officers "that Doe had a history of making 'fraudulent accusations' against him and stated he believed she was trying to get him in trouble with the police. Defendant was released.

After stopping defendant, police again spoke to Doe, who provided video footage from security cameras at her home showing defendant driving by her home at the time of the incident. Police also determined from a records search that there had been 14 prior police reports involving Doe and defendant. After officers' efforts to contact defendant further were unsuccessful because phone numbers he had provided to them were no longer in service, they referred the matter to the District Attorney with a recommendation that stalking charges be filed against defendant.

On August 4, 2018, the police were advised that defendant had been previously placed on the No-Fly List and that the FBI had received notification that defendant had bought a one-way ticket to Egypt scheduled for departure on the morning of August 4. After consultation with the District Attorney's Office, police officers arrested defendant at his home.

1  Dkt No. 12-3 at 91-92.

2  ## LEGAL STANDARDS

3  This Court may entertain a petition for a writ of habeas corpus "in behalf of a

4  person in custody pursuant to the judgment of a State court only on the ground that he is in

5  custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

6  § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with

7  respect to any claim that was adjudicated on the merits in state court unless the state

8  court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

9  involved an unreasonable application of, clearly established Federal law, as determined by

10  the Supreme Court of the United States; or (2) resulted in a decision that was based on an

11  unreasonable determination of the facts in light of the evidence presented in the State court

12  proceeding." 28 U.S.C. § 2254(d).

13  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

15  of law or if the state court decides a case differently than [the Supreme] Court has on a set

16  of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

17  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

18  in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state

19  court decision. *Id.* at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While

20  circuit law may be "persuasive authority" for purposes of determining whether a state

21  court decision is an unreasonable application of Supreme Court precedent, only the

22  Supreme Court's holdings are binding on the state courts and only those holdings need be

23  "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *overruled on*

24  *other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

25  "Under the 'unreasonable application' clause, a federal habeas court may grant the

26  writ if the state court identifies the correct governing legal principle from [the Supreme

27

28

United States District Court
Northern District of California

Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

Petitioner claims that his plea is invalid because it was made under duress. He also claims that he agreed to plea to a misdemeanor charge of internet stalking, but the public defender changed the count to a strike felony. Neither of these claims has any merit, as discussed below.

### 1.  Relevant Facts

The state appellate court set forth the relevant background regarding Petitioner's plea as follows:

> On April 5, 2019, defendant, pursuant to a negotiated plea agreement, pleaded no contest to count 2, assault with a deadly weapon (§ 245, subd. (a)(1)) based upon the understanding that that he would be sentenced to no more than two years in prison. The court confirmed that defendant signed the waiver of rights and plea form filed with the court,[FN3] and that, before doing so, he had discussed with his attorney the charges, possible defenses thereto, his constitutional rights, and the consequences of changing his plea. The court inquired of defendant as to whether he understood that by entering of plea of guilty or no contest, he would be giving up his constitutional right to a speedy and public trial by court or jury, the right to confront witnesses, the right to present evidence and to compel witnesses to testify on his behalf, and the right to remain silent. The court confirmed further that by entering of plea of guilty or no contest, defendant would be subject to a restitution fine, would be waiving his right to appeal or file a writ, and that because the offense was a strike offense, if he were convicted of a felony in the future, his prior strike conviction would result in the doubling of the sentence for the conviction of the later offense. Defendant entered a plea of no contest to count 2. The court found a factual basis for the plea, and it found further that

defendant knowingly, intelligently, and voluntarily waived his rights in entering the no contest plea.[FN4]

[FN3] In the waiver of rights and plea form signed and initialed by defendant, he confirmed his agreement to a plea of no contest to one count of violating section 245, subdivision (a)(1); his understanding of the terms of the plea agreement, including that he would receive a maximum sentence of two years; and his understanding of the consequences of his agreement to plead no contest, including his waiver of his constitutional rights as referenced by the court during the hearing in which defendant changed his plea. Defendant also agreed to waive all rights to appeal. The applicable language initialed by defendant read: "14. (Appeal and Plea Withdrawal Waiver) I hereby waive and give up all rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. I agree not to file any collateral attacks on my conviction or sentence at any time in the future. I further agree not to ask the Court to withdraw my plea for any reason after it is entered."

[FN4] Defendant also pleaded no contest in a second case (Monterey County Superior Court case No. 18CR006985) to the misdemeanor charge of disorderly conduct—intentional distribution of the image of the intimate body part(s) of another identifiable person (§ 647, subd. (j)(4)(A)). The court sentenced defendant to 180 days in jail with a credit of 180 days served.

On May 15, 2019, after hearing argument and statements from the victim and her  husband, the court denied defendant's request for probation and imposed a prison sentence on count 2 at the lower term of two years.[FN5] The court granted defendant 569 days of custody credits and imposed fines and assessments, including a restitution fine of $300. It also issued a 10-year criminal protective order pursuant to section 136.2, subdivision (a)(1). And the court dismissed or struck all remaining counts or special allegations pursuant to section 1385. The court set a further hearing on the victim's claim for restitution.[FN6]

[FN5] After the court imposed sentence, defendant asked to address the court. In support of his request for probation, defendant argued (1) he did not have a criminal history, (2) he had served this country over the past 15 years working for the Department of Defense, (3) he had suffered greatly as a result of the case, (4) the victim had engaged in a campaign of harassing and stalking defendant, including making many complaints at his workplace, (5) he had received threatening e-mails

United States District Court
Northern District of California

from the victim's family member, (6) the victim had used her relationship with police officers "to expunge the police reports [he] filed against her," (7) he never intended to cause any physical harm to the victim, and (8) on the day of the incident that resulted in the assault charges, defendant by chance encountered the victim on the road while he was driving an Uber vehicle and had a customer in the car. The court responded that its two-year prison sentence had already been imposed, and that it was not going to grant probation.

[FN6] On May 31, 2019, the court removed the restitution hearing from the calendar. The record does not show that a restitution hearing occurred in the case.

Defendant filed a timely notice of appeal, indicating the appeal was based upon "the sentence or other matters occurring after the plea that do not affect the validity of the plea."[FN7]

[FN7] Defendant filed a second notice of appeal on July 12, 2019, indicating that, in addition to challenging the sentence or other matters occurring after the plea, he also challenged the validity of the plea, seeking a certificate of probable cause, which was granted. Defendant filed a third notice of appeal on July 29, 2019 in which he challenged the validity of the plea, seeking a certificate of probable cause, which was granted.

Dkt No. 12-3 at 93-95.

### 2. The State Appellate Court's Rejection of Claim

Without elaboration, the state appellate court determined "that there are no arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d at pp. 441-443.)" Dkt No. 12-3 at 96.

### 3. Legal Standard

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (same); *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir. 2012) (by pleading guilty defendant waived right to challenge pre-plea violation of Speedy Trial Act); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to

United States District Court
Northern District of California

prevent the use of his confession as pre-plea constitutional violation); *see also Hudson v. Moran*, 760 F.2d 1027, 1030 (9th Cir.) (finding no constitutional violation where defendant was not informed that guilty plea would foreclose subsequent habeas relief), *cert. denied*, 474 U.S. 981 (1985).  Nor may he raise claims relating to the deprivation of rights under treaties that occurred before the guilty plea.  *United States v. Reyes-Platero*, 224 F.3d 1112, 1115 (9th Cir. 2000) (unconditional guilty plea precluded claim that defendant's rights under the Vienna Convention on Consular Relations were violated).

A defendant who pleads guilty may not collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel.  *United States v. Broce*, 488 U.S. 563, 574 (1989); *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Nor may he collaterally attack his plea's validity merely because he made what turned out, in retrospect, to be a poor deal.  *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).

The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett*, 411 U.S. at 267.  A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  *Id.*; *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004); *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988); *Hudson*, 760 F.2d at 1030.  This is not limited to incompetent advice concerning the guilty plea itself but rather extends to ineffective assistance rendered in other pre-plea contexts.  *Mahrt v. Beard*, 849 F.3d 1164, 1171 (9th Cir. 2017) (allegation that counsel rendered ineffective pre-plea assistance by failing to file motion to suppress falls within *Tollett* exception).

Due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to

United States District Court
Northern District of California

1    confront one's accusers, and the privilege against self-incrimination.  *See Boykin v.*

2    *Alabama*, 395 U.S. 238, 242-43 (1969). It does not, however, require a state court to

3    enumerate all the rights a defendant waives when he enters a guilty plea as long as the

4    record indicates that the plea was entered voluntarily and understandingly.  *See Rodriguez*

5    *v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986), *cert. denied*, 479 U.S. 1057 (1987).

6        The long-standing test for determining the validity of a guilty plea is "'whether the

7    plea represents a voluntary and intelligent choice among the alternative courses of action

8    open to the defendant.'"  *See Parke v. Raley*, 506 U.S. 20, 29 (1992) (quoting *North*

9    *Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  This requires a review of the circumstances

10   surrounding the plea.  *See Brady v. United States*, 397 U.S. 742, 749 (1970).  The totality

11   of the circumstances includes "both the defendant's subjective state of mind and the

12   constitutional acceptability of the external forces inducing the guilty plea."  *Doe v.*

13   *Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotations and citations omitted).

14   Of particular importance is that defendant enter a guilty plea with sufficient awareness of

15   the relevant circumstances and likely consequences, *Brady*, 397 U.S. at 748; *see also*

16   *United States v. Rodriguez*, 49 F.4th 1205, 1211-12 (9th Cir. 2022) ("A plea agreement is

17   made knowingly if the defendants understands the terms and, to a certain extent, the

18   consequences of the agreement."; declining to determine to what extent defendant must

19   understand consequences of plea) (omitted footnote), and that he understand the law in

20   relation to the facts, *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  A guilty plea

21   not made voluntarily and intelligently violates due process.  *See Boykin*, 395 U.S. at 242.

22       **4.  Analysis**

23       Petitioner claims that he entered a plea involuntarily and/or unintelligently based on

24   the following circumstances:  the prosecutor threatened him with a life sentence if he

25   refused the plea deal, Petitioner was never informed of the charges or punishment he was

26   facing, he and his family members were subjected to harassment and discrimination by law

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

enforcement agents, the judge threatened to increase the charges if Petitioner proceeded to a jury trial, and his public defender failed to inform him of the charges to which he was pleading and the related consequences.  *See* Traverse at 4-6.

A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion, *Brady*, 397 U.S. at 754-55, and is "unintelligent" if the defendant is without the information necessary to assess intelligently "the advantages and disadvantages of a trial as compared with those attending a plea of guilty," *id.* at 755.

The transcript of the plea hearing plays a significant role in an inquiry into the validity of a plea:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citations omitted).

The transcript in this case reveals that Petitioner knew he was pleading no contest to a felony and that he entered the plea without duress or coercion.  At the outset of the hearing, Petitioner's public defender placed the terms of the plea on the record.  He stated that Petitioner would be entering "a plea of no contest to a charge of Penal Code 245(a)(1). The expected term at the time of sentencing will not exceed two years." Dkt No. 12-3 at 31.  Before taking Petitioner's plea, the Court specifically noted that a violation of Penal Code 245(a)(1) was a felony and counted as a strike.  *Id.* at 35.  Petitioner acknowledged that he understood the terms of the plea, the possible defenses to the charges, his constitutional rights, and the consequences of the change of plea.  *Id.* at 32-33.  He also denied that he had been threatened or coerced to change his plea.  *Id.* at 35.  Likewise, the plea deal itself reveals that Petitioner knew he was pleading no contest to Penal Code 245(a)(1) with a sentence of no more than two years. Dkt No. 12-2 at 186.  Petitioner's

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

attorney attested to having explained the plea and its consequences to Petitioner, and the Arabic interpreter swore that they translated the entire form to Petitioner and that Petitioner stated that he understood its contents.  *Id.* at 188.

With the "strong presumption of verity" attached to his plea, Petitioner bears a heavy burden to show that the plea was entered into involuntarily and unintelligently.  He does not meet that burden here.  Petitioner alleges that his public defender "threat[ened]" him when he advised Petitioner that he faced a lengthy prison sentence if he did not sign the plea.  *See* Traverse at 12.  But defense counsel appears only to have advised Petitioner of the risks of proceeding to trial and the benefits of the plea agreement; that is not a threat. Petitioner claims defense counsel failed to advise him of the terms of the plea, but the transcript of the plea hearing and the plea agreement itself indicate that Petitioner was aware of the terms when his attorney placed those terms on the record, he declared in court that he understood the terms and had no questions, and he swore when signing the plea agreement that he understood its terms.  The same may be said of Petitioner's claim that he was "threatened" with a life sentence and told that he could not receive a fair trial because the community is racist and feminist.  Yet in open court and on the plea agreement itself, Petitioner denied that he had been threatened by anyone.  Petitioner's arguments are belied by the record, and his post hoc assertions here do not meet his burden of overcoming the presumption of the plea's validity.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated:_____January 10, 2023

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

Case No. 20-02708 BLF (PR)
ORDER DEN. PET. FOR WRIT OF HABEAS CORPUS; DEN. CERTIFICATE OF APPEALABILITY